

/ cc.

(15)

8-10-01

sc

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
HARRISBURG, PA

AUG   9 2001

MARY E. D'ANDREA, CLERK
Per_____
        Deputy Clerk

KENNETH ALAN SHIFFER,      )
            Petitioner,            )
                               )    C.A. NO. 1:CV-00-1829
VS.                            )    HABEAS CORPUS ACTION
                               )    VIA STATE PRISONER
SUPERINTENDENT BEN VARNER      )    28 U.S.C. §2254
THE PA. ATTORNEY GENERAL, AND  )
THE COLUMBIA COUNTY OFFICE OF  )
THE DISTRICT ATTORNEY,         )    (WILLIAM W. CALDWELL, UNITED STATES DISTRICT JUDGE)
            Respondents.           )


## MEMORANDUM OF LAW SUBMITTED BY COLUMBIA
## COUNTY DISTRICT ATTORNEY, JOHN W. McDANEL, RESPONDENT

**I.      PROCEDURAL AND FACTUAL HISTORY:**

Petitioner was arrested on October 9, 1987, and charged with criminal homicide.

On November 18, 1988, he was convicted of second degree murder after a Trial by jury.  Timely

Post-Trial Motions were filed and denied; and subsequently, the Petitioner was sentenced to life

imprisonment on February 12, 1990.

Appellant filed an Appeal to the Superior Court of Pennsylvania, which affirmed

the judgment of sentence on October 18, 1990.  A Petition for Allowance of Appeal to the

Pennsylvania Supreme Court was denied on June 27, 1991.

The Petitioner obtained new counsel, and on January 6, 1997, a Post-Conviction

Relief Act Petition for Collateral Relief was filed.  A Hearing was held before the Columbia

-1-

County Court of Common Pleas - Criminal Division on June 26, 1997 and, after a second Hearing in which additional testimony was taken, a Decision was rendered by the lower court denying the Petitioner's PCRA Petition on October 28, 1997.

Subsequently, the Petitioner appealed the denial of his PCRA Petition to the Superior Court of Pennsylvania raising the identical five issues that were raised in the initial PCRA Petition. On February 10, 1999, the Superior Court of Pennsylvania affirmed the judgment of the Court of Common Pleas of Columbia County.

The Petitioner then filed a Writ of Habeas Corpus raising six grounds, two of which (identified as "Ground 1 and Ground 2") were not raised in the PCRA Petition.

II.    **FACTUAL BACKGROUND:**

The victim, Leonard Radziak, was beaten in the early morning hours of May 11, 1987, as he was attempting to enter his room in the Hayes Hotel, LaSalle Street, Berwick, Columbia County, Pennsylvania.

The victim was taken to the Berwick Hospital and later life-flighted to the Geisinger Medical Center where he expired in the evening of May 12, 1987. During the course of the investigation that was conducted by the Berwick Police Department with assistance from the Pennsylvania State Police, Diane Sklarz was interviewed. Diane Sklarz identified a man that she saw under a street light and carrying a round cylindrical object in his right hand shortly after the attack occurred and within one block from the location where the attack occurred. Diane Sklarz,

through the use of photographic arrays, positively identified this person as Kenneth Shiffer.

Subsequently, Kenneth Shiffer was arrested and, thereafter, convicted after a Trial by jury.


**III.    LAW AND ARGUMENT:**

**GROUND 1 -** RAISED BY THE PETITIONER REGARDING THE
IDENTIFICATION TESTIMONY OF DIANE SZKLARZ

Testimony at the time of Trial revealed that the victim had sustained injuries of two

general types. Some of the injuries were consistent with an instrument which would be straight

and rounded or a cylindrical type object.

Shortly after the time of the beating, a man was seen jogging approximately one

block from the scene carrying what appeared to be a silver pipe in his right hand, and wearing a

black or dark colored "Members Only" type jacket. Previous testimony had also revealed that an

individual so dressed and carrying a similar object was seen leaving Hayes Hotel just prior to the

viewing one block away.

The viewing one block away was by Diane Sklarz. Diane Sklarz was thoroughly

examined and cross-examined at the time of Trial, and she was absolutely certain in her testimony

that the individual that she saw under a street light was carrying some type of object and was

wearing a "Members Only" type of jacket. Diane Sklarz testified in detail as to what a "Members

Only" jacket was.

Interestingly enough, the Defendant denied having a "Members Only" jacket, and

directed his girlfriend to turn over a different jacket to the police when they questioned him.

In determining whether to suppress Diane Sklarz's testimony, the Court reviewed the fact that the initial identification by Diane Sklarz was made as a result of viewing three photographic arrays. The Defendant's photograph was selected from the third array.

At the time of the Suppression Hearing, there was a dispute as to the actual sketch of the suspect in comparison to the testimony of Diane Sklarz. Diane Sklarz was adamant that the person she saw did not have a full beard. Unfortunately, the police sketch artist did not have a complete composite kit, and therefore, sketched a suspect who appeared to have a full beard where none should exist. A grease pencil was subsequently used ineffectively to correct the composite and only made it worse.

Nevertheless, the facts remain that Diane Sklarz viewed the suspect for several seconds under a street light with clear vision and a clear view from her porch. The demeanor and candor of the witness at the Suppression Hearing was observed by the Court, and in the Honorable Court's opinion, a suppression was not deemed appropriate. Generally, case law does not require a certain time threshold for a witness to have the opportunity to witness a crime, and thereafter, be permitted to testify. Seconds of time, if properly viewed and if burning themselves in clear memory, are adequate to protect a Defendant from being misidentified at Trial.

In this case, it is clear that Diane Sklarz had a clear view of the Defendant and was able to identify him immediately after the occurrence of the crime and approximately one block away from the crime. Diane Sklarz was able to describe the Defendant down to the detail of his

-4-

clothing and appearance, and in particular, indicated that he was wearing a "Members Only" type jacket. Obviously, the witness provided sufficient detail to substantiate the fact that she had had an adequate opportunity to view the Defendant and to remember his description.

### GROUND 2 - RAISED BY THE PETITIONER REGARDING THE SUFFICIENCY OF THE EVIDENCE PRESENTED

The standard to apply in determining the Defendant's claim that insufficient evidence was presented was that of whether, viewing all the evidence in a light most favorable to the Commonwealth as a verdict winner, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find the existence of every element of the crime beyond a reasonable doubt. Commonwealth v. Jermyn, 533 A.2d 74 (1987).

The Commonwealth presented the following evidence in order to achieve a finding of guilt:

The Commonwealth's expert witness, Dr. Isidore Mihalikis, testified that several of the victim's injuries during the course of the beating were caused by a straight, rounded, cylindrical type object.

Kenneth Shiffer, the Defendant, was spotted jogging and carrying what appeared to be a pipe, and wearing a black "Members Only" type jacket shortly after the occurrence of the crime. The Defendant was spotted by the eyewitness, Diane Sklarz, while he was standing immediately under a lighted street light. An individual with similar clothing and carrying a long

-5-

cylindrical object had been seen leaving the Hayes Hotel immediately after the beating.

When questioned by the police regarding the ownership of a "Members Only" type jacket, the Defendant directed his girlfriend to turn a jacket over to the police. However, and significantly, this jacket **did not** match the jacket described by the eyewitness, Diane Sklarz.

The Defendant claimed that he did not possess a "Members Only" style jacket. However, the police subsequently discovered a blood-stained "Members Only" jacket in a darkened area of a second closet in the Defendant's apartment. When questioned about the second jacket, the Defendant responded that the police would never be able to prove "that it was Lenny's blood".

The Defendant also appeared to be confused with respect to what he read in the newspaper and how much money was actually on the victim when he was found. This caused a police officer to state to the Defendant that the information that he had he could not have obtained from the newspaper because it had not been published as such. The Defendant then stated that he got the information from George Sheeler, who was also charged and later convicted of the homicide in question. It was only after the Trooper again questioned the Defendant as to his knowledge that the Defendant did not answer directly, but stated that he was home the entire evening of the homicide.

In summary, the Commonwealth established that the victim had been beaten to death with at least some of the injuries coming from a rounded cylindrical object. An individual was seen leaving the scene of the crime shortly after the crime was committed, matching in

description the Defendant and carrying a long cylindrical object.  Shortly thereafter and

approximately one block away, a similarly dressed and equipped individual was spotted under a

working street light by the eyewitness, Diane Sklarz, who identified the Defendant and the fact

that he was carrying a long cylindrical object.  The eyewitness, Diane Sklarz, was not only definite

in her positive identification that it was the Defendant that she saw under the street light, but also

that he was wearing a "Members Only" type jacket.

     Subsequently, a "Members Only" type jacket was found after the Defendant had

voluntarily turned over a different jacket and denied owning a "Members Only" type jacket.

     The Defendant also offered discrepancies with respect to his knowledge as to what

amount of money was on the victim at the time.  Information that the police maintained had not

been published in news accounts in a manner as described by the Defendant.

     Direct evidence of the crime is not required.  Commonwealth may prove homicide

by circumstantial evidence.

     It is well-recognized that the Commonwealth need not prove a crime by direct

evidence, but rather, may rely upon circumstantial evidence.  In this case, it is apparent that the

Commonwealth adequately proved each element of the crime necessary to sustain the conviction

of second degree murder.

### GROUND 3 - RAISED BY THE PETITIONER REGARDING THE INEFFECTIVENESS OF COUNSEL FOR FAILING TO PERMIT THE PETITIONER TO TESTIFY

The Petitioner maintains that he wanted to testify.  However, his trial counsel

allegedly told him not to, when the Petitioner maintains that his testimony would have "showed" the jury that the Petitioner was not guilty.

It is well settled that there is a presumption that counsel is effective. Common-wealth v. Garnett, 613 A.2d 569 (1992). In order to defeat that presumption, the Petitioner must prove that the course of action that the Petitioner alleges counsel is ineffective for failing to pursue had arguable merit, and additionally, that counsel had no reasonable basis for the action or omission in question; and further, that the act or omission prejudiced the Petitioner to the point that, but for the act or omission, the outcome of the case would have been different. Commonwealth v. Appel, 689 A.2d 891 (1997).

In this case, Petitioner's trial counsel testified at two separate PCRA Hearings (June 26, 1997 and October 15, 1997) that he did not prevent the Petitioner from testifying. Rather, trial counsel had expressed his opinion to the Petitioner that it was in the Petitioner's best interests not to take the stand in his own defense.

Trial counsel based this on the Petitioner's demeanor, coupled with the fact that it would be necessary for him to offer an explanation with respect to a "Members Only" jacket that had been confiscated from his residence pursuant to a search warrant, and further, which an eyewitness had identified him as having worn on the night of the murder and near the scene of the murder.

Trial counsel reasonably concluded that although DNA testing had determined that it was blood but could not determine whether it was human or animal, the question of where the

blood came from would have been a proper subject of inquiry by the Commonwealth had the Petitioner taken the stand in his own defense.

Trial counsel was well aware that the Petitioner had advised him that the blood on the jacket had come from a prior aggravated assault for which the Petitioner had been tried and convicted. The aggravated assault in question was responsible for the blood on the Petitioner's jacket. Trial counsel quite properly was concerned that the jury could conclude that the Petitioner had a propensity for violence. This prior incident, coupled with the Petitioner's demeanor caused trial counsel to offer a recommendation that the Petitioner not testify in his own behalf.

Additionally, trial counsel was comfortable that the Petitioner's girlfriend at the time had testified as to an alibi defense which was consistent with what the Petitioner had stated to the arresting state troopers.

With respect to trial counsel's advice concerning the Petitioner's decision as to whether or not to take the witness stand in his own defense, it is well settled that the Petitioner must demonstrate that trial counsel either interfered with his freedom to testify, or that trial counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify on his own behalf. Commonwealth v. Harper, 614 A.2d 1180 (1992).

The Petitioner at no time stated that trial counsel interfered with his freedom to testify. Furthermore, a review of trial counsel's testimony reveals that his advice was not at all unreasonable, and therefore, was incapable of vitiating a knowing and intelligent decision by the Petitioner. Trial counsel was adamant that the Petitioner made the final decision not to testify.

**GROUND 4 -** <u>RAISED BY THE PETITIONER REGARDING PETITIONER'S CLAIM THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE CHARGE OF REASONABLE DOUBT GIVEN TO THE JURY</u>

The Petitioner maintains that the jury instruction was inadequate because it failed to instruct the jury that reasonable doubt could arise from the lack of evidence.

This matter has been previously resolved in Pennsylvania Courts in the case of Commonwealth v. Evancho, 103 A.2d 289 (1954). In that case, the reasonable doubt instruction did not include mention of the significance of a lack of evidence. Notwithstanding the failure to include such wording, the instruction was found sufficient with the Court noting the following:

> In a number of jurisdictions, it has been held that the jury should be instructed that "a reasonable doubt may arise not only from the evidence introduced, but from lack of evidence". It has frequently been held that instructions are not erroneous merely for failure to state in express terms that reasonable doubt may arise from lack of evidence. Pennsylvania has never required this form of charge.

The lower court's jury instruction adequately and accurately reflected the law as it existed at that time, and it was not ineffective for trial counsel not to object.

**GROUND 5 -** <u>RAISED BY THE PETITIONER REGARDING PETITIONER'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR WITHDRAWING A PRE-TRIAL MOTION FOR CHANGE OF VENUE OR VENIRE</u>

The Petitioner continues to insist that trial counsel was ineffective for withdrawing a Motion for Change of Venue or Venire. In fact, the record reveals that the trial counsel based this withdrawal upon receiving the right to conduct liberal individual voir dire of the prospective jurors.

-10-

Trial counsel testified at Petitioner's PCRA Hearing that he chose this course of action because the liberal questioning of the juror permitted by the lower court was much more beneficial for his client in terms of obtaining individualized information.

In order to sustain an ineffectiveness claim, the Petitioner must show that trial counsel had no reasonable basis for his tactics, or that the Petitioner was actually prejudiced by those tactics.  Commonwealth v. Birdsong, 650 A.2d 26 (1994).

Nowhere in any petition, brief or transcript has the Petitioner been able to rationalize or point to evidence that he was prejudiced by trial counsel's choice to engage in individual voir dire.  Furthermore, trial counsel's testimony clearly establishes a reasonable basis for his choice of tactics.

**GROUND 6 -** <u>RAISED BY THE PETITIONER REGARDING PETITIONER'S CLAIM THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO IMPEACH A POLICE OFFICER ABOUT "THE MONEY"</u>

Petitioner apparently claims that there was some type of "rouse" regarding whether or not the victim was found with a sum of $400.00 cash in his pocket at the time of his death, and whether such information could have been learned by the Petitioner through a newspaper article that had been published prior to his questioning by police officers.

The Superior Court found the Petitioner's argument so confusing and convoluted that it stated it in its entirety.  (See Opinion dated February 10, 1999, Page 9).  Simply said, the Petitioner has not provided any coherent point of reference to not only adequately describe his complaint, but also, to allow any court to draw a conclusion that his claim was of arguable merit

-11-

or that his counsel's tactics with regard to any questioning concerning the amount of money found on the victim were anything other than reasonable; therefore, no prejudice to the Petitioner could be established.

In fact, the Honorable President Judge Gailey C. Keller, at the time of the issuance of his Decision regarding the Petitioner's PCRA Petition (see Decision of October 28, 1997), reviewed this same issue wherein he concluded that, after a review of the Trial record, there did not appear to be any real confusion as to how the Petitioner obtained knowledge of the money that was in the victim's possession at the time of the victim's death.

In fact, Judge Keller found no quarrel with trial counsel's failure to pursue that particular issue and opined that there was no need to "beat a dead horse". Judge Keller concluded that the Petitioner's claim fell far short of carrying his burden to overcome the presumption of trial counsel's competency.

## IV.    SUMMARY:

Petitioner's grounds have previously and exhaustively been litigated, briefed, reviewed and adjudicated. It is requested that this Honorable Court enter an Order finding the Petitioner's Writ of Habeas Corpus to have no merit and, therefore, dismissed with prejudice.

Respectfully submitted,

JOHN W. McDANEL, ESQUIRE
COLUMBIA COUNTY DISTRICT ATTORNEY
I.D. #50867