

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH ALAN SHIFFER,          :
          Petitioner

                               :

          vs.                  :    CIVIL ACTION NO. 1:CV-00-1829

                               :       (Judge Caldwell)

BEN VARNER, et al.,
          Respondents          :

M E M O R A N D U M

**I.    Introduction**

          Kenneth Alan Shiffer, an inmate at SCI-Dallas, has filed
a pro se petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254, challenging his 1988 conviction for second-degree
murder in the Court of Common Pleas of Columbia County,
Pennsylvania, for which he received a sentence of life
imprisonment.

          The petition raises the following grounds for relief.
First, the trial court erred by not suppressing an eyewitness
identification.  Second, the evidence was insufficient to sustain
the conviction.  Third, trial counsel was ineffective in four
ways: (1) preventing Petitioner from testifying on his own behalf
at his trial; (2) failing to object to the jury instruction on
reasonable doubt; (3) withdrawing a pre-trial motion for change of

venue or venire; and (4) failing to cross-examine a police officer concerning the officer's testimony about Petitioner's statement dealing with the amount of cash the victim possessed.

For the reasons discussed below, we will deny the petition.

II.   Background

Lenny Radziak was beaten to death on May 11, 1987, just outside his room in the Hayes Hotel in Berwick, Pennsylvania. Petitioner was charged with the crime.  Before trial, Shiffer filed a motion to suppress three eyewitness identifications, including one made by Diane Sklarz, the identification at issue before us.  He argued that her identification should be suppressed because: (1) it was unreasonably suggestive based on the gap in time between the date of the identification (July 13, 1987) and the date she had observed Petitioner (May 11, 1987), and the gap in time between the identification and the preliminary hearing (November 4, 1987); (2) it was unreliable since it was made from across the street and only for a brief period of time; and (3) it was tainted since the preliminary-hearing identification was not made independently from the photographic array.

On June 1, 1988, a hearing was held on the motion in county court.  Sklarz testified that she left her dog out about

-2-

1:00 a.m. on May 11, 1987, at her home, which is one block over and six houses removed from the hotel. When the dog began barking, she went to her door and saw a man jogging across the street with a pipe-like object in his hand, wearing a Members Only jacket. When she called to her dog, the man stopped under a street lamp across the street and faced her for about six seconds from a distance of eighty feet.

In attempting to identify the man, the police presented Sklarz with three photographic arrays. The first two arrays did not include a photograph of Petitioner. The third array did. When that array was presented to her on July 13, 1987, she identified Petitioner as the man she had seen in the early morning of May 11, 1987. She did not identify anyone from the first two arrays.

On June 30, 1988, the trial court denied the motion to suppress Skarlz's identification, finding the identification was reliable because Sklarz "had direct face and eye contact with Defendant for at least six seconds, under a streetlight at a distance of approximately eighty feet." Commonwealth v. Shiffer, No. 294, slip op. at 3 (Columbia Co. June 30, 1988). In addition, the court noted that she was "adamant" that he was the man she had seen on the day of the crime.

At trial, the Commonwealth presented the following evidence, in pertinent part. An expert witness testified that some of the victim's injuries were caused by a straight, rounded, and cylindrical object. Robert Farver, a resident of the hotel, testified that he returned around 1:20 a.m., May 11, 1987, and walked past a man who was leaving the hotel carrying a long, cylinder-like object in his right hand. (Tr. at pp. 75-76). Diane Sklarz testified that sometime after 1:00 a.m. on May 11, 1987, she saw a man whom she identified as Shiffer, running near her home shortly after the crime occurred, carrying a pipe-like object, and wearing a black Members Only jacket. (Id. at pp. 132-139). The police found a jacket matching her description in Shiffer's apartment, despite Shiffer's claim that he did not own a black Members Only jacket. In addition, an officer testified at trial that Petitioner knew the amount of cash the victim possessed.

In November 1988, a jury convicted Petitioner of second-degree murder. He filed motions in arrest of judgment and for a new trial, arguing that there was insufficient evidence to sustain his conviction and that the court erred by not suppressing Sklarz's identification. The trial court denied the motions in January 1990. In February 1990, Shiffer was sentenced to life imprisonment.

-4-

He took a direct appeal to the Pennsylvania Superior Court, raising the same grounds as those in his post-trial motion--that there was insufficient evidence to convict him and that the trial court should have suppressed Sklarz's identification.  The superior court affirmed his conviction.  In June 1991, the Pennsylvania Supreme Court denied Shiffer's petition for allowance of appeal.

Petitioner filed a petition under the Postconviction Relief Act ("PCRA") in January 1997, in which he raised the same ineffective-assistance-of-counsel claims as those in the petition before us.

The trial court held a hearing on the petition.  In pertinent part, the hearing dealt with Shiffer's claim that his trial counsel had prevented him from testifying in his own defense.  Specifically, the claim is that Shiffer would have testified except that counsel erroneously told him that the Commonwealth would have been able to impeach him with a previous conviction for aggravated assault.  (This assault is the apparent source of the blood stains on the Members Only jacket.)

At the hearing, Shiffer testified that he asked trial counsel whether he would be taking the stand and counsel said he would not because of the aggravated-assault conviction.  If not for the advice about this conviction, Petitioner said he would

-5-

have testified because he felt it was important for the jury to hear from him that he had not been involved in the crime. (PCRA hearing, June 26, 1997, at pp. 7-8).

Trial counsel testified that he advised Petitioner not to take the stand for several reasons. First, he believed the aggravated-assault conviction would come in. Second, the substance of Petitioner's testimony, an alibi defense, was already covered by the testimony of state troopers and Petitioner's wife. The troopers testified that he told them he was with his wife and children and his wife testified to his alibi. Third, trial counsel believed that Petitioner's "persona" would not be well received by the jury. (Id. at pp. 22-25). Trial counsel also stated that he did not tell Petitioner not to testify, that he only advised him not to, that Petitioner knew it was his own decision, and that Petitioner decided against testifying based on counsel's advice. (Id. at p. 23).

Subsequently, trial counsel offered an additional explanation for advising Shiffer not to take the stand. He believed that if Shiffer took the stand and testified to his innocence, the Commonwealth would have been entitled to cross-examine him as to how the blood stains got on his jacket. At that point, Shiffer would have had to have testified the stains came from the previous aggravated assault. Also important was the

-6-

AO 72A

trial court's refusal to rule before Petitioner took the stand that the aggravated-assault conviction could not come in. (PCRA hearing, October 15, 1997, at p. 9).

In October 1997, the trial court denied the PCRA petition. On the claim involving the decision not to testify, the court first noted that trial counsel's cross-examination scenario was the only way the prior conviction could have gotten before the jury since it did not qualify as impeachment evidence under Pennsylvania law because it was not a crime of dishonesty or false statement. The court then denied the claim, stating:

> Counsel's concern about opening the door and permitting Defendant's prior conviction for assaultive conduct to be introduced, when coupled with his opinion that the Commonwealth was unable to sustain its burden to convict, and his concern about the Defendant's demeanor on the witness stand, reasonably justified his advise (sic) that the Defendant not take the stand.
>
> We are satisfied beyond all doubt that the Defendant, a man of prior criminal experience, knowingly and intelligently made the decision not to testify. We will not second-guess both the advice given by counsel nor Defendant's ultimate decision to follow this advice. . . .

(Doc. 12, trial court's PCRA opinion, filed Dec. 23, 1997, at pp. 5-6).

The Pennsylvania Superior Court affirmed the trial court's decision in February 1999. The Pennsylvania Supreme Court

-7-

AO 72A

denied Shiffer's pro se petition for allowance of appeal on December 3, 1999.  He then filed the instant petition on October 16, 2000.

III.  Discussion

    A.  Standard of Review.

       Under section 2254, a federal habeas court reviews state criminal convictions for violations of "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  When a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  See generally, Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).

       Additionally, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. § 2254(e)(1).  Further, a petitioner must have exhausted state-court remedies before filing a federal habeas petition.  See 28 U.S.C. § 2254(b)(1)(A).

-8-

AO 72A

B.  The Alleged Error by the Trial Court in
    Failing to Suppress Diane Sklarz's
    Identification.

Pretrial identification procedures violate due process when they are "'unnecessarily suggestive'" and create a "'substantial risk of misidentification.'"  United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting Government of V.I. v. Riley, 973 F.2d 224, 228 (3d Cir. 1992)).  Any suggestiveness may be negated by the following reliability factors.  Id. (quoting Manson v. Brathwaite, 432 U.S. 98, 106, 97 S. Ct. 2243, 2248, 53 L.Ed.2d 140, 149 (1977)).  "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."  Brathwaite, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L.Ed.2d at 154 (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 383, 34 L.Ed.2d 401, 411 (1972)).  We examine the identification in light of the "'totality of the circumstances.'"  United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting Riley, 973 F.2d at 228).

Shiffer contends that the trial court's failure to suppress Sklarz's photo identification violates due process.  He argues, in a conclusory fashion, that the identification was

-9-

AO 72A

suggestive. He also argues that the identification was unreliable because it was made under poor conditions (from eighty-feet away, for six seconds, at night, and under a streetlight).

We reject the claim of suggestiveness because we find no indication that the identification procedures were suggestive,[1] nor has Petitioner pointed to any procedures that were suggestive. This failure in itself is enough to reject this claim. See United States v. Mathis, 264 F.3d 321, 330-31 (3d Cir. 2001).

Petitioner seems to imply that the identification procedure was suggestive because Sklarz did not identify Petitioner until the third photographic array. This fact has no significance when neither of the first two arrays included a photograph of Petitioner. (Suppression Hr'g Tr. at p. 47). In fact, it probably supports the accuracy of the identification.

As to the claim that Sklarz's identification was unreliable because of the circumstances, that was an issue for the jury, in the absence of unconstitutionally suggestive procedures. Id. at 331, 333.

---

[1] The arrays did not draw attention to Petitioner; the first two did not even have his photograph. Further, all of the photographs presented their subjects against a similar background. All three arrays used mug shots, and many of them, like Petitioner's, identified the charges against the subject. We do not believe the third array was suggestive simply because Petitioner's mug shot was the only one that identified a violent felony.

-10-

    C.  <u>Sufficiency of the Evidence</u>.

       Petitioner claims the evidence at trial was insufficient to sustain a guilty verdict on the charge of second-degree murder.[2]  This claim is cognizable in habeas corpus as a due process claim.  <u>See</u> <u>Jackson v. Byrd</u>, 105 F.3d 145 (3d Cir. 1997).

       The test is, considering the evidence in the light most favorable to the government, whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).  The court is not to make its own subjective determination of guilt or innocence.  <u>Id.</u> at 319 n.13, 99 S.Ct. at 2789 n.13, 61 L.Ed.2d at 574 n.13.

       When reviewing a sufficiency of the evidence claim on habeas corpus review, we look to state law to determine whether the prosecution proved each element of the offense.  <u>Byrd</u>, 105 F.3d at 149.  Direct evidence is not required.  The government may

---

[2]Second-degree murder in Pennsylvania is a criminal homicide committed during the perpetration of a felony, whether one was acting as a principal or as an accomplice.  Pa. Stat. Ann. tit. 18, § 2502(b) (West 1998).  Pennsylvania law defines "perpetration of a felony" as: "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery . . . . § 2502(d).  The intent to commit the underlying crime is imputed to the killing.  <u>Commonwealth v. Mikell</u>, 556 Pa. 509, 515, 729 A.2d 566, 569 (1999).

-11-

prove its case, as we believe it has done so here, through circumstantial evidence.

We reject Petitioner's claim. As noted, the government's evidence included the following. The government's expert witness testified some of the victim's injuries were caused by a straight, rounded, and cylindrical object. Robert Farver, a resident of the hotel, testified that he returned to the hotel around 1:20 a.m., May 11, 1987, and walked past a man that was leaving the hotel carrying a long, cylinder-like object in his right hand. (Tr. at pp. 75-76). Diane Sklarz testified that sometime after 1:00 a.m. on May 11, 1987, she saw a man whom she identified as Shiffer, running near her home shortly after the crime occurred, carrying a pipe-like object, and wearing a black Members Only jacket. (Id. at pp. 132-139). The police found a jacket matching her description in Shiffer's apartment, despite Shiffer's claim that he did not own a black Members Only jacket. In addition, an officer testified at trial that Petitioner knew the amount of cash the victim possessed. We find this evidence sufficient to sustain Shiffer's conviction for second-degree murder.

We reject Petitioner's arguments to the contrary. His first argument attacks reliance on Sklarz's identification as

-12-

contradictory, inconsistent, and fatally flawed.  However, we have already found her identification was for the jury to assess.

In his second argument, Petitioner contends that the blood-stained Members Only jacket found at his home was not relevant because the government never determined whether the blood was human.  However, as we understand it, the jacket was important to the government's case for a reason other than the blood stains; the jacket was relevant to the identification of Petitioner.  When Sklarz saw a man running by her home on May 11, 1987, she indicated that he was wearing a black Members Only jacket. Petitioner denied that he owned such a jacket, but the police found such a jacket in Petitioner's closet.

We will not consider Petitioner's other sufficiency-of-the-evidence arguments because he did not exhaust his state-court remedies on them.  Further, he cannot satisfy the two exceptions to exhaustion that would permit us to review them: (1) cause and prejudice; or (2) a miscarriage of justice.

Before seeking relief in federal court, a state prisoner must exhaust available state-court remedies; that is, he must present all of his claims to the state courts, including the highest state court.  Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  The requirement is also set forth in the statute.  28 U.S.C.

-13-

§ 2254(b)(1) (Supp. 2001).  The habeas corpus petitioner has the burden to prove exhaustion.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  Respondent's failure to raise exhaustion is irrelevant.  Section 2254(b)(3) "requires an express waiver through counsel in order for the state to have waived the nonexhaustion defense."  Lambert, supra, 134 F.3d at 514.

Although the two arguments we addressed above were presented to the state courts, Petitioner's remaining arguments asserting insufficient evidence were not.  Those unexhausted claims are as follows.  First, reasonable doubt exists because the victim told police that "Louie did it.  Louie did it."  (See Pet'r Ex. H).  Second, Petitioner only knew that the victim possessed $400 because his co-defendant had told him the amount in unsuccessfully soliciting his help in robbing the victim.  Third, Petitioner's alibi was corroborated by his girlfriend.  Fourth, at least six other people had a reason or opportunity to assault the victim.

While normally we would dismiss a habeas petition containing unexhausted claims so that Petitioner may present the claims to the state courts, Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), we will not do so if a petitioner's return to state court would be futile because of a state procedural bar.

-14-

AO 72A

Whitney, 280 F.3d at 250 (quoting Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457, 470 (1996)).

The PCRA is Petitioner's only state-court avenue of relief. It requires that any PCRA petition (including a second or successive petition, as Shiffer's would be) must be filed within one year of the date the conviction became final.[3] Pa. Stat. Ann. tit. 42, § 9545(b)(1) (West 1998); see also Commonwealth v. Alcorn, 703 A.2d 1054, 1056 (Pa. Super. 1997) (holding that the PCRA one-year time limit applies to second or successive PCRA petitions even when a prisoner's conviction became final and his first PCRA petition was filed before the PCRA was amended). Under this standard of finality, Shiffer's judgment of conviction became final in 1991 (ninety days after the Pennsylvania Supreme Court denied allowance of appeal).[4] Because a year has easily passed since then, any state postconviction petition filed now would be rejected as time-barred. Thus, these claims are procedurally

---

[3]There are exceptions to the one-year limitations period, but they do not appear to apply here. A PCRA petition can be filed more than one year after the conviction becomes final if: (1) the claim was not raised previously because of interference by government officials; (2) the facts surrounding the claim could not have reasonably been known before then; or (3) the claim is based on a newly recognized constitutional right that is applied retroactively. See Pa. Stat. Ann. tit. 42, § 9545(b)(1) (West 1998).

[4]The conviction becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." Pa. Stat. Ann. tit. 42, § 9545(b)(3) (West 1998).

defaulted.[5]  See Commonwealth v. Fahy, 558 Pa. 313, 737 A.2d 214
(1999) (the one-year limitations period is jurisdictional even for
a judicially approved second or successive PCRA petition claiming
a miscarriage of justice); Lines v. Larkin, 208 F.3d 153, 164-65
(3d Cir. 2000).

However, the futility of Shiffer's return to state court
does not mean he is entitled to a review of his claims on the
merits.  Lines, 208 F.3d at 166.  His state-court procedural
default requires him to show "cause and prejudice" justifying the
default or a fundamental miscarriage of justice before we can
consider the merits of those claims.  Id., He cannot do so.

Cause for the procedural default is established by
"'show[ing] that some objective factor external to the defense
impeded counsel's efforts to comply with the State's procedural
rule.'"  Werts v. Vaughn, 228 F.3d at 178, 192-93 (3d Cir. 2000)
(brackets added)(quoted case omitted).  Petitioner cannot show
cause for his default because he has not explained why he could

_____

[5]The PCRA timing requirements were amended in 1995,
effective January 16, 1996.  Section 9545 provides a one-year
grace period dating from January 16, 1996, when a petitioner's
conviction became final on or before the effective date of the
PCRA amendments.  That provision only applies to a petitioner's
first petition.  Commonwealth v. Vega, 754 A.2d 714, 717 (Pa.
Super. 2000).  If Petitioner were to return to the state courts
to file a PCRA petition involving the unexhausted claims before
us, he would be filing a second petition, to which the one-year
grace period provision would not apply.  Id. at 717-18.  In any
event, even if it would apply, Petitioner's return to the state
courts would be untimely.

not have raised his claims in his previous PCRA proceeding. <u>See</u> <u>Caswell v. Ryan</u>, 953 F.2d 853, 862 (3d Cir. 1992).

Petitioner has also not met the "miscarriage of justice" exception. A miscarriage of justice occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Id</u>. (quoted case omitted). A "petitioner must 'persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" <u>Cristin v. Brennan</u>, 281 F.3d 404, 420 (3d Cir. 2002) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808, 837 (1995)).

Petitioner has not pointed to any new evidence. The Third Circuit has, in limited circumstances not required new evidence where the evidence on the record is insufficient to convict a defendant. <u>Id.</u> at 420-21; <u>see</u> <u>United States v. Garth</u>, 188 F.3d 99 (3d Cir. 1999). As we decided above, the record before us is sufficient to sustain the conviction. Moreover, in <u>Garth</u>, the Third Circuit found significant that the state court had interpreted a statute to require more conduct than what the defendant allegedly committed. <u>Sweger v. Chesney</u>, __F.3d__, 2002 WL 1389973, at *12 n.18 (3d Cir. June 27, 2002).

-17-

D.  <u>Claims of Ineffective Assistance of Counsel</u>.

Petitioner alleges his trial counsel was ineffective for (1) failing to allow Petitioner to testify on his own behalf; (2) failing to object to the jury charge on reasonable doubt; (3) withdrawing a motion for change of venue or venire; and (4) failing to cross-examine a police officer concerning the officer's testimony about Petitioner's statement dealing with the amount of cash the victim possessed.

To prove a constitutional violation for ineffective assistance of counsel, Petitioner must meet a two-pronged test.  First, he must prove that counsel's performance was deficient.  <u>Jermyn v. Horn</u>, 266 F.3d 257, 282 (3d Cir. 2001).  That is, he must show that counsel's performance fell below an "objective standard of reasonableness."  <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).  There exists a strong presumption that trial counsel's performance was reasonable and might be considered sound trial strategy.  <u>Jermyn</u>, 266 F.3d at 282 (quoting <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir. 1996)) (internal quotation marks omitted).

Second, he must show that he was prejudiced by the deficient performance.  <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L.Ed.2d at 693.  The test is, whether there is a

-18-

AO 72A

reasonable probability that but for that deficiency, the outcome of the proceedings would have been different. Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. We consider the totality of the evidence before the jury. Jermyn, 266 F.3d at 283. However, our review is highly deferential, as we make "every effort to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. at 2052, 80 L.Ed.2d at 694.

In his first ineffectiveness-of-counsel claim, Petitioner argues that his trial counsel was ineffective for not allowing Petitioner to testify on his own behalf. A defendant has a Fifth Amendment right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Only the defendant can waive that right. United States v. Leggett, 162 F.3d 237, 245 (3d Cir. 1998) (citations omitted). The waiver must be knowingly and voluntarily made. Brooks v. Zimmerman, 712 F.Supp. 496, 503 (W.D. Pa. 1989).

Petitioner does not assert that he did not know about his right to testify or that counsel coerced him into not testifying. Instead, he argues that trial counsel's advice not to

-19-

testify "was so unreasonable as to vitiate a knowing and intelligent decision by [him] not to testify," (Pet'r Supp. Br., at p. 13), because counsel erroneously believed that the conviction for aggravated assault could be used to impeach Petitioner if he took the stand.  Petitioner maintains that this advice was the only reason he did not take the stand, regardless of counsel's other reasons for not testifying.  He contends counsel should have filed a motion in limine to obtain a ruling from the court on the admissibility of his prior conviction.

We reject Petitioner's claim.  To begin with, while no motion in limine was filed, the trial court did state that it would defer ruling on the admissibility of the prior conviction during the defense case until the issue became "ripe," since it was not known whether Shiffer would take the stand, and if he did, what he would testify to.  (See Commonwealth's Br. Opp'n to PCRA Pet. at p. 5).  Thus, counsel already had a ruling that dealt substantially with the same issue a motion in limine would have.  Further, it was in the face of this adverse ruling that counsel had to advise Petitioner whether to testify.

Second, federal habeas courts must generally accept state-court fact findings.  See, e.g., Campbell v. Vaughn, 209 F.3d 280, 285-86 (3d Cir. 2000).  Implicit factual findings are sufficient.  Id. at 290.  In this case, the trial court implicitly

AO 72A

rejected Petitioner's assertion that he would have testified but for counsel's advice that the aggravated-assault conviction could be used to impeach him.  After summing up counsel's reasons against testifying, the trial court said in its PCRA opinion: "We will not second-guess both the advice given by counsel nor Defendant's ultimate decision to follow this advice."  (Doc. 12, trial court's PCRA opinion, filed Dec. 23, 1997, at p. 6).  In making this finding, the trial court found that Petitioner decided not to testify not just because of the threat of the aggravated-assault conviction but also because he accepted counsel's advice about the effect his persona would have on the jury.  We conclude that the latter reason was objectively reasonable advice.  See e.g., Campbell, supra, (finding advice by trial counsel that defendant not testify was not ineffective assistance of counsel); see also Hooks v. Ward, 184 F.3d 1206, 1218-21 (10th Cir. 1999) (finding counsel's advice to defendant not to testify was sound trial strategy and not ineffective); Frey v. Schuetzle, 151 F.3d 893, 899 (8th Cir. 1998) (finding counsel's advice was based upon reasonable trial strategy).

Petitioner next argues that his counsel was ineffective for failing to object to the jury instruction on reasonable doubt. The challenged portion of the jury instructions are as follows:

-21-

> When we say that the Commonwealth must
> prove the guilt of the Defendant beyond a
> reasonable doubt, reasonable doubt does not
> mean beyond the shadow of a doubt, nor beyond
> the possibility of a doubt, nor is it a doubt
> that a juror might conjure up in his or her
> own mind to avoid the performance of an
> unpleasant duty.  But, reasonable doubt simply
> defined is such a doubt that would cause a
> person of ordinary firmness and prudence to
> hesitate to act in important affairs of his or
> her own life.
>
> Obviously a doubt to be reasonable must be
> one that arises from the evidence and must be
> such a doubt that would fairly strike a
> conscientious mind and cloud your judgment and
> cause you to hesitate to conclude that this
> Defendant is guilty.

(Trial Tr., at pp. 339-40) (emphasis by Petitioner).

Petitioner maintains that it was error not to also charge the jury that reasonable doubt can arise from the lack of evidence.  In rejecting this claim, the Pennsylvania Superior Court held that the trial court's reasonable-doubt instruction did not violate state law, citing Commonwealth v. Evancho, 175 Pa. Super. 225, 103 A.2d 289 (1954).  (Doc. 12, Superior Court's PCRA opinion, filed Feb. 10, 1999, slip op. at 7).  Evancho rejected the contention that the court had to charge the jury that reasonable doubt could arise from a lack of evidence when the trial court, charged, in pertinent part, that "[a] reasonable doubt is a doubt that would grow out of the evidence produced n this case . . . ."  Id. at 229, 103 A.2d at 291.  In part, the

-22-

court reasoned: "If the jury is not convinced beyond a reasonable doubt from the evidence produced does this reasonable doubt not arise from the want of sufficient credible evidence?" Id. at 231, 103 A.2d at 292.

The Constitution neither requires a jury instruction as to the meaning of reasonable doubt nor prohibits it. Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583, 590 (1994). The constitutional question for us is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard." Id. at 6, 114 S.Ct. at 1243, 127 L.Ed.2d at 591. The inquiry then is not whether any particular word or words were used but rather whether the instruction as a whole adequately conveyed the concept of reasonable doubt to the jury. Id. at 5, 114 S.Ct. at 1243, 127 L.Ed.2d at 590 (citations omitted).

The state court's conclusion is in accord with the federal cases in this area. Federal courts have also concluded that a reasonable-doubt instruction need not specifically charge the jury that reasonable doubt can arise from the lack of evidence. See United States v. Diaz, 176 F.3d 52, 101-02 (2d Cir. 1999); United States v. Rogers, 91 F.3d 53 n.2 and 57 (8th Cir. 1996)("The additional language, in any event, says nothing that is

not already obvious to people of common sense.  That a lack of evidence may cause one to have a reasonable doubt is self-evident.").

We reject Petitioner's claim.  In our view, the court's instruction that reasonable doubt must arise from the evidence was merely its attempt to impress on the jury that they had to decide the case based on the evidence.  And after reviewing the entire charge, we find that it adequately conveyed the meaning of reasonable doubt to the jury.  See Diaz, supra, (court examines the entire charge for correctness).  To begin with, the jury was charged that the Commonwealth had the burden of proving Petitioner's guilt beyond a reasonable doubt.  (Trial Tr. at p. 39).  Next, immediately after the challenged portion of the charge quoted above, the court continued as follows:

> This principle of law, as we said, places the
> burden on the Commonwealth to prove the guilt
> of the Defendant beyond a reasonable doubt
> before you may convict him.  It not only is
> limited to the question or overall question of
> guilt or innocence, but it also means that
> when you retire to the Jury Room . . . to
> begin your deliberations and weigh and go over
> and test all of the testimony and evidence
> that has been presented, if you have a
> reasonable doubt about any particular relevant
> fact or matter, as well as the overall
> question of guilt or innocence of the
> Defendant, then that doubt must be resolved in

-24-

> the Defendant's favor and against the
> Commonwealth.

(Trial Tr., at p. 340).

The reminder of the jury's duty to "weigh and go over and test all of the testimony and evidence," with instructions on how to do so elsewhere in the charge, essentially conveyed to the jury that a lack of evidence could give rise to a reasonable doubt.

We also do not find that trial counsel was ineffective for withdrawing a pre-trial motion for a change of venue or venire. Although trial counsel had filed a pre-trial motion to change venue or venire, arguing that the media coverage prejudiced Shiffer, counsel withdrew the motion in exchange for the right to conduct individual voir dire of potential jurors.[6] Trial counsel testified at Petitioner's postconviction hearing that he believed that individualized juror questioning was going to be more beneficial to Shiffer than pursuing the change of venue motion because of the information he could elicit from the prospective jurors. (June 26, 1997, PCRA Hr'g Tr., at pp. 17-18, 30-31).

Petitioner has failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." See Strickland v. Washington, 466 U.S.

---

[6]In Pennsylvania, individual voir dire is only mandated in capital cases, which Petitioner's state case was not. See Pa. R. Crim. Proc. 631(E) (formerly Rule 1106(E)).

AO 72A

668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694-95 (1984). It was objectively reasonable for trial counsel to consider it more advantageous to conduct individual voir dire rather than pursuing a motion that may not have been granted.

Finally, Petitioner has also failed to establish that trial counsel was ineffective for failing to cross-examine (impeach in Petitioner's words) a police officer about the latter's testimony concerning the Petitioner's statement to the officer about a sum of $50 that might have been taken from the victim. Petitioner argues that a newspaper article mentioning the sum of $400 should have been used to challenge the $50 figure as a fabrication implying that Petitioner knew something about the robbery that was not public knowledge as to the amount of cash the victim possessed. We fail to see how using the newspaper article on cross-examination would rebut the trooper's testimony since it would only reveal what the police had decided to say about the money involved, or what they knew about the money.

We will issue an appropriate order.

William W. Caldwell
William W. Caldwell
United States District Judge

Date:  August 1, 2002

-26-

AO 72A